# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DETONY L. TIMMS,                          )
Widower of Leslie S. Timms,               )
                                          )
      Plaintiff,        )
                                          )
v.                                        )      No. 4:18 CV 1653 DDN
                                          )
ANDREW M. SAUL,[1]                        )
Commissioner of Social Security,          )
                                          )
      Defendant.        )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Leslie S. Timms for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff Leslie S. Timms, now deceased, filed her applications, alleging a July 17, 2012 onset date. She was born on August 19, 1983, and was 28 years old at the time of her onset date. (Tr. 240.) She alleged disability due to depression, degenerative disc disease, pinched nerve, rheumatoid arthritis, COPD, chronic pain, fibromyalgia, restless

---

[1] The Court takes judicial notice that on June 4, 2019, the Hon. Andrew M. Saul became the Commissioner of Social Security. See https://www.congress.gov/nomination/116th-congress/94. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of 42 U.S.C. § 405(g) (last sentence).

leg syndrome, spasm, and migraines.  (Tr. 148-49.)  Her applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 148-53, 156-57.)

On September 28, 2017, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act.  (Tr. 15-25.)  The Appeals Council denied her request for review.  (Tr. 1-3.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

On October 28, 2018 plaintiff Leslie S. Timms died from a pulmonary embolism. Her spouse, Detony L. Timms, was substituted as a party to this action.[2]  (ECF Docs. 20-21.)  However, for clarity in this opinion, "plaintiff" hereafter refers to decedent Leslie S. Timms.

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff Leslie S. Timms's medical and other history relevant to his appeal.

During 2016, plaintiff was seen in the emergency room or emergency department seven dates.  (Tr. 693-96, 1007, 1029, 1059.)

She underwent a spinal fusion and was hospitalized March 22-26, 2016.  (Tr. 650, 683.)  On May 6, 2016, she was seen at Barnes Jewish Hospital (Barnes) for follow-up on her spinal fusion surgery.  (Tr. 1268.)  She also underwent x-rays at that time.  (Tr. 664.)

In November 2016, plaintiff underwent surgery for removal of a kidney stone and was hospitalized for one day.  (Tr. 1084-85.)

During 2016, plaintiff saw doctors on approximately 36 separate dates, sometimes with more than one appointment on these dates.  Her medical care in 2016 consisted

---

[2] As substitute plaintiff in this matter, Detony L. Timms could seek appointment as Substitute Claimant and would be eligible to receive benefits from the Social Security Administration if Leslie S. Timms were found disabled as the result of the December 2014 Disability Insurance Benefits claim pursuant to 20 C.F.R. § 404.503(b)(1).

primarily of eye examinations, doctors' and mental-health appointments, lab work, and imaging tests. (Tr. 606, 612-13, 634, 636, 638, 640, 642, 662, 664, 667, 669, 697, 710, 717, 719, 723, 726, 730, 732, 992-93, 1000-01, 1023, 1057, 1076, 1079, 1100, 1114-15, 1129, 1131-32, 1134-35, 1136-40, 1141-43, 1144, 1148-51, 1241-43, 1247-48, 1249-50, 1258, 1260, 1262, 1267-68, 1273-74, 1275-77, 1279, 1281-83, 1284-89, 1290, 1420-29 1434-35.)

### ALJ Hearing

On April 20, 2017, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 37-71.) She was 33 years old. She has been diagnosed with rheumatoid arthritis, bipolar disorder, migraine headaches, fibromyalgia, and small nerve neuropathy. She lives with her sister and three children, ages 10 through 13. (Tr. 40-43.) She sees several doctors, including a neurologist, rheumatologist, psychiatrist, orthopedist, primary care physician, and pain management doctor. (59-62.)

A vocational expert (VE) also testified at the hearing. The VE testified that plaintiff had past work as a waitress, bartender, kitchen helper, fast food worker, cook, and telephone customer service representative. The VE believed that plaintiff would be unable to return to her past work. The ALJ asked the VE whether a hypothetical claimant with the same residual functional capacity (RFC) and vocational factors as plaintiff could perform jobs other than plaintiff's last work. The VE testified that the hypothetical claimant could perform the representative jobs of document preparer, addresser, and ampoule sealer. The vocational expert testified that those jobs existed in national numbers of 40,000, 11,000, and 11,000, respectively. (Tr. 63-66.)

The ALJ also asked the vocational expert how many unexcused or unscheduled absences employers customarily expect from their employees per month. The VE testified that missing two or more days of work per month would preclude competitive employment. (Tr. 66.)

Following the hearing, the ALJ requested a medical opinion from Subramaniam Krishnamuathi, M.D., a state-agency medical consultant. (Tr. 1467-69.) The ALJ asked Dr. Krishnamuathi if plaintiff's symptoms would result in unscheduled absenteeism from the workplace more than one time per month, on a regular, consistent basis, and he responded "no." (Tr. 1499.)

## III. DECISION OF THE ALJ

On January 24, 2018, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 10-24.) At Step One, the ALJ found that plaintiff had not performed substantial gainful activity since July 17, 2012, her alleged onset date. At Step Two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease, status post lumbar surgery; fibromyalgia; and depression. (Tr. 17.) The ALJ then found that plaintiff had the RFC to perform a reduced range of light work as defined in 20 C.F.R. sections 404.1567(b) and 416.967(b). (Tr. 19.)

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work. Based upon the testimony of a vocational expert, the ALJ found that plaintiff's impairments would not preclude her from performing other work that exists in the national economy, including the jobs of document preparer, addresser, and ampoule sealer. The ALJ found that those jobs existed in significant numbers in the national economy and therefore concluded that plaintiff was not disabled under the Act. (Tr. 23-25.)

## IV. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings apply the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the administrative final decision is supported by substantial evidence, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert,* 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues the ALJ erred in finding she had an unrestricted capacity to maintain full-time work without excessive absences.  She also argues the ALJ's Step Five finding is not supported by substantial evidence because there was no evidence of the availability of other jobs by region.

### 1.  Plaintiff's Capacity To Maintain Full Time Work

Plaintiff argues the ALJ erred in failing to include in her RFC any restriction on her capacity to maintain normal attendance in full-time work.  She argues she presented overwhelming evidence that she would have been unable to maintain the work schedule described by the vocational expert, and yet the ALJ failed to address the issue entirely.  In support, she states that she sees doctors nearly every month of the year, noting that she received medical care on 52 dates in 2016, therefore averaging slightly more than four appointments per month.  She argues that she is unemployable because a vocational expert testified that missing work two or more days per month would preclude employment.  This Court disagrees.

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th 2004).  "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (*quoting Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).  "However, there is no requirement that an RFC finding be supported by a specific medical opinion."  *Id.*  Nor is an ALJ limited to considering medical evidence exclusively when evaluating a claimant's RFC. *Cox*, 495 F.3d at 619. "It is the claimant's burden, and not the Social Security

Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

In this case, the ALJ specifically addressed plaintiff's purported need for an absenteeism limitation. After the administrative hearing, the ALJ requested a medical opinion from Subramaniam Krishnamuathi, M.D., a state-agency medical consultant. The ALJ asked Dr. Krishnamuathi if plaintiff's symptoms would, within a reasonable degree of medical probability, result in "unscheduled absenteeism" from the workplace more than one time per month, on a regular, consistent basis. After reviewing plaintiff's medical records Dr. Krishnamuathi responded "No." (Tr. 1467-99.) The ALJ also noted that plaintiff provided no evidence that any of her medical providers suggested that her appointments would result in her consistently missing work. (Tr. 23.) Thus, the ALJ did not err in not including an absenteeism limitation in plaintiff's RFC.

Moreover, substantial evidence supports Dr. Krishnamuathi's opinion. During 2016, plaintiff was seen in the emergency room on seven dates. (Tr. 693-96, 1007, 1029, 1059.) With the exception of those emergency visits, plaintiff appears to have scheduled her medical appointments in advance. Thus, plaintiff's appointments would not have resulted in "unscheduled" absenteeism more than once a month, consistent with Dr. Krishnamuathi's opinion.

Moreover, plaintiff presents no evidence that her medical appointments would have required her to miss a full day of work. Although plaintiff could not have attended work during her two hospitalizations in 2016, the majority of her other appointments in 2016 consisted of eye exams, doctor's and mental-health appointments, and lab work and imaging tests. There is no record evidence that those appointments would have required her to miss a full day of work.

In sum, the ALJ expressly considered whether to include an absenteeism limitation but declined to do so based upon the medical evidence of record. As discussed above, Dr. Krishnamuathi opined that plaintiff's symptoms would not result in unscheduled

absenteeism more than once per month.  (Tr. 1499.)  Moreover, plaintiff presented no evidence that the majority of her appointments would require her to miss an entire workday or that she would be unable to be arrange her appointments around a work schedule.

Further, to the extent plaintiff is arguing that Dr. Krishnamuathi reviewed only a portion of the exhibits, the record supports the conclusion that Dr. Krishnamuathi reviewed the entire medical evidence.  The ALJ--who provided the exhibits to Dr. Krishnamuathi for review--indicated that Dr. Krishnamuathi reviewed the medical evidence of record.  (Tr. 21, 1467.)  Also, in his Medical Source Statement, Dr. Krishnamuathi referenced various medical exhibits, including Exhibits 1F, 3F, 13F, 20F, and 23F.  (Tr. 1491.)  It is reasonable to conclude that Dr. Krishnamuathi reviewed the medical exhibits from 1F through 23F, which constituted the complete record evidence at the time.  And the exhibits referenced by Dr. Krishnamuathi document plaintiff's medical appointments in 2016, and therefore, Dr. Krishnamuathi knew the frequency of her medical treatment.

To the extent plaintiff contends the ALJ erred by asking Dr. Krishnamuathi whether plaintiff's "symptoms" rather than her "medical appointments" would cause unscheduled absences, this argument is without merit.  Plaintiff's "symptoms" were the reason for her medical appointments.  Thus, there was no need for the ALJ to separately ask Dr. Krishnamuathi to consider whether plaintiff's medical appointments would result in unscheduled absences.

To the extent plaintiff asserts that a medical opinion on this issue is unnecessary, because counting the number of medical appointments in a particular year is not a "medical" issue, plaintiff's argument misses the point.  A medical opinion is nevertheless useful in determining whether a claimant's appointments were medically necessary. Further, simply counting the number of medical appointments per year is an inaccurate

measure because, as discussed above, it does not address whether the appointments would require absence for a full or partial workday.

Plaintiff has the burden of proving her RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). And she has presented no evidence that her appointments would require her to miss an entire workday or that she would be unable to arrange her appointments around a work schedule. Finally, plaintiff has presented no medical opinion that contradicts that of Dr. Krishnamuathi.

For these reasons, this Court concludes the ALJ did not err in not including a restriction in plaintiff's capacity to maintain normal attendance in full-time work.

### 2. Step Five Finding and Vocational Expert's Testimony

Plaintiff next argues the ALJ erred at Step Five because there was no evidence of the availability of other jobs by region. The Court disagrees.

Step Five of the sequential disability evaluation requires that the Commissioner provide "evidence that demonstrates that other work exists in significant numbers in the national economy that [plaintiff] can do[.]" 20 C.F.R. § 404.1560(c)(2). "Significant numbers in the national economy" as applied in the context of Social Security claims is a specific term of art: "'work which exists in the national economy' means work which exists in significant numbers where [the plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1560(c)(1) (emphasis added). Thus, as defined in the Act, "national economy" can refer to two separate points of data: job numbers in the region where a claimant lives or job numbers in a combination of regions. *See id.* Either number is sufficient under the Act.

In this case, the vocational expert provided a sum total of jobs nationwide and no regional data. The vocational expert cited the jobs of document preparer, envelope addresser, and ampoule sealer, with over 62,000 such positions available in total nationwide. (Tr. 66.) This Court and others have held that even smaller nationwide numbers support the inference that a job is available in multiple regions of the country.

*See, e.g., Gutierrez v. Comm'r*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs nationwide).

Plaintiff relies solely on this Court's decision in *Britton v. Berryhill*, No. 4:17 CV 1956 DDN, 2018 WL 4332062, at *1 (E.D. Mo. Sept. 11, 2018). However, in *Britton,* the Court was already remanding on other issues. The Court also acknowledged that the issue had not been decided yet by the Eighth Circuit. After further review, the Court finds no precedential authorities indicating that the ALJ may not rely on national numbers alone to meet the Commissioner's burden of showing jobs that exist in "significant numbers in the national economy." Also, there is nothing in the nature of the jobs cited by the vocational expert, i.e., document preparer, envelope addresser, and ampoule sealer, that suggests they are limited to only one or a few regions of the nation. And plaintiff makes no argument that all three jobs cited by the VE do not exist in significant numbers in both the region where plaintiff lives and broadly in the national economy.

*Britton* is also distinguishable on the facts. There, for two of the three jobs cited by the vocational expert, plaintiff proved that there were apparent conflicts between the hypothetical question posed by the ALJ and the job descriptions in the Dictionary of Occupational Titles. *Britton*, 2018 WL 4332062, at *4 (citing *Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014)). Thus, those jobs could not satisfy the Commissioner's Step Five burden. *See Moore*, 769 F.3d at 989–90. The plaintiff in *Britton* also provided vocational evidence that she could not perform the one remaining job identified by the vocational expert due to her use of prescribed narcotic medication. *Britton*, 2018 WL 4332062, at *5–6. Thus, Britton had shown that the Commissioner failed to meet her burden at Step Five to produce any jobs that she could perform existing in either the regional or national economy. *See id.*

Accordingly, the Court concludes the Commissioner met his burden at Step Five by producing evidence of job numbers available within the state or broadly available nationwide.

## I.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.


_____/s/ David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 16, 2020.